The original version of this document remains under seal.

# Exhibit I



North America  Europe  Asia

1700 K Street, NW
Washington, DC 20006
T +1 202 282 5000
F +1 202 282 5100

**ABBE DAVID LOWELL**
Partner
(202) 282-5875
ADLowell@winston.com

June 24, 2019

<u>**VIA E-MAIL**</u>

Gillian Grossman, Esq. and Samuel Adelsberg, Esq.
Assistant United States Attorneys
Southern District of New York
One Saint Andrew's Plaza
New York, New York 10007

Re:   **The Kingdom of Morocco's Note Verbale to the U.S. Embassy in Rabat**

Dear Ms. Grossman and Mr. Adelsberg:

I write on behalf of our client, the Kingdom of Morocco, concerning the ongoing investigation regarding the retention and treatment of domestic workers ███████████ ████████████████████. To ensure transparency and the free flow of information, please find attached a copy of a note verbale (no. 177/19), dated June 11, 2019, that Morocco's Foreign Minister sent to the U.S. Embassy in Rabat. The note verbale and its accompanying attachment describe multiple measures that Morocco either has taken or is taking to ensure that Morocco's diplomatic staff is fully informed as to the domestic law requirements regarding the retention and treatment of domestic workers in the United States and to ensure full compliance with the governing law.

Among other measures, Morocco ███████████████████



▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

While Morocco is sensitive to domestic law issues, Morocco reaffirms its insistence that all international conventions be strictly honored. As Morocco has previously raised—in both a March 26, 2019 note verbale (NV-1344696) (also attached) and a March 27, 2019 letter from the Kingdom's counsel to the U.S. Attorney's Office—Morocco is concerned that the investigation may not be respecting its consular privileges in the course of its investigation. Under Article 33 of the Vienna Convention on Consular Relations, "consular archives and documents shall be inviolable at all times and wherever they may be." The Government stated in its March 28, 2019 letter to Morocco's counsel that, "[t]o the extent the Government encounters any information that appears to pertain to the exercise of consular functions, we will immediately cease our review of that information and delete it from our files."

Under international law, however, a host country cannot take consular archives and documents simply upon a promise to delete such information from its files. The materials cannot be taken, whether intentionally or otherwise, in the first instance. We doubt that, if the situation were reversed, the United States would receive well the news that a foreign law enforcement agency has seized U.S. consular data and justified the seizure upon the assurance that such data would be returned at a later time. The Government's actions in question here are particularly concerning because we understand that the investigative agents who executed the search warrant may have been specifically seeking documents that we believe are clearly protected and privileged under international law.

Further, the Government may not interrogate, interview or elicit information from Morocco's Consular or Mission staff as it relates to their Consular or Mission functions (any more than Morocco may interview or interrogate U.S. diplomats serving in Rabat). As reflected in the March 26, 2019 note verbale (NV-1344696), Morocco has not waived any of its rights or privileges.

Understanding that the scope of Morocco's consular privilege may not be immediately evident with respect to certain documents and other forms of information, we would expect some level of coordination with Morocco to ensure that its privileges are not compromised. For example, any lists of guests attending a consular function ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ may not be readily identified as consular information but nevertheless is privileged consular material. Consular driving schedules and text messages showing the transportation and location of Morocco's diplomatic personnel at any particular time are similarly sensitive, protected information, although such text messages may initially seem innocuous. Of course, this information is privileged whether it is contained in a document or, alternatively, to be elicited in



an interview/interrogation. We tried to have conversations about this issues earlier and continue to want to do so now to ensure that all privileges are honored.

Finally, we note Morocco's continuing concern regarding the treatment of certain of its nationals, including the seizure of their cell phones, which by now should have been returned, and the Government's decision to restrict their right to travel outside the United States. This subject was specifically raised in the most recent note verbale, with the Kingdom agreeing to guarantee the return of certain Moroccan nationals in the event the U.S. Attorney's Office intends to call them for testimony.

Morocco emphasizes that it does not intend to be obstructionist. At the same time, it insists that its rights—and the rights of its nationals—be fully respected. The United States and Morocco have a mutual interest to ensure that the ongoing investigation be handled consistent with international norms and conventions.

We would like to facilitate responses to the pending issues and the overall investigation.

Sincerely,

Abbe David Lowell

# Exhibit A

Royaume du Maroc
Ministère des Affaires Étrangères
et de la Coopération Internationale

Direction du Protocole
NV. 177/19



المملكة المغربية
وزارة الشؤون الخارجية
والتعاون الدولي

مديرية التشريفات

1 1 JUIN 2019

Le Ministère des Affaires étrangères et de la Coopération Internationale présente ses compliments à l'Ambassade des Etats Unis d'Amérique à Rabat et, en référence aux notes verbales 19-397, 19-398, HC-16-19, HC-17-19, HC-18-19, HC-19-19, HC-20-19, HC-21-19, HC-21-19 et HC-26-19 a l'honneur de lui faire parvenir, ci-joint, un document portant sur les mesures prises et à prendre par le Maroc dans le cadre de la coopération avec les autorités américaines pour remédier aux circonstances liées à l'enquête en cours du Département de la justice concernant Mme. Maria Luisa ESTRELLA JAIDI, son frère-Ramon Singson ESTRELLA, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.

Dans ce cadre, le Royaume du Maroc tient à réaffirmer son engagement à traiter cette affaire, dans toutes ses étapes, de manière responsable, diligente et efficace.

Le Royaume du Maroc espère que les mesures effectivement mises en œuvre et les mesures annoncées, permettront de régler cette situation dans l'esprit d'amitié, d'alliance et de partenariat de longue date entre les deux pays, et de dépasser rapidement ses conséquences.

Le Ministère des Affaires étrangères et de la Coopération Internationale saisit cette occasion pour renouveler à l'Ambassade des Etats Unis d'Amérique à Rabat les assurances de sa haute considération.

**AMBASSADE DES ETATS UNIS D'AMERIQUE**
Rabat





















# Exhibit B

*Royaume du Maroc*
*Ministère des Affaires Étrangères*
*et de la Coopération Internationale*



*Direction du Protocole*
1344696

المملكة المغربية
وزارة الشؤون الخارجية
والتعاون الدولي

مديرية التشريفات

2 6 MARS 2019

The Ministry of Foreign Affairs and International Cooperation of the Kingdom of Morocco presents its compliments to the Embassy of the United States of America in Rabat, and with reference to the *Note Verbale* of United States Mission to the United Nations HC-21-19 of march 15th, 2019, and to the *Note Verbale* of the Embassy of the Kingdom of Morocco to the United States NV/ZB02/2019 of March 16th, 2019, has the honor to state the following:

1. The Ministry of Foreign Affairs and International Cooperation has demonstrated its full and expeditious cooperation with the United States with regards to the current situation. It reiterates yet again its willingness to continue cooperation with the United States authorities, to the full extent possible, under the understandings and agreements in effect.

2. At the same time, the Ministry of Foreign Affairs and International Cooperation attaches great importance to the full respect of international law on diplomatic immunities and privileges, in particular the *Vienna Convention on Diplomatic Relations*, the *Vienna Convention on Consular Relations* and the *Convention on the Privileges and Immunities of the United Nations*.

3. The Ministry of Foreign Affairs and International Cooperation understands the seriousness of the allegations in documents filed in the United States courts and does not condone violation of the laws of the countries in which its officials operate or live. Nevertheless, in making arrangements for full cooperation, the Ministry of Foreign Affairs and International Cooperation, as does the United States in its offices abroad, expects full adherence to international law and agreements and, in this instance, the understandings that were reached between the two countries.

4. On March 16, 2019, the Permanent Mission of the Kingdom of Morocco to the United Nations, on behalf of the Kingdom of Morocco, voluntarily waived the inviolability of ▮▮▮▮ Yonkers, New York ▮▮▮▮ also known as ▮▮▮▮▮▮ Yonkers, New York ▮▮▮▮), under the express condition that its representatives could enter the premises with law enforcement and "*together review, consider and inventory the belongings that remain.*" The Permanent Mission of the Kingdom of Morocco to the United Nations was formally advised of the State Department's appreciation and the express acknowledgement of the condition.

5. Nevertheless, the following events occurred when the search warrant was executed:

    – Law enforcement agents detained multiple diplomatic agents, consular staff, and domestic workers for over four hours over the Permanent Mission's counsel's objection. The detention was intended for purposes not part of the understandings above mentioned in paragraph 3.

    – Counsel for the Mission were not aware that individuals would not be allowed to leave immediately, before any search began (as they were not under arrest) nor that any individual would be questioned (as the understanding called only for a search of premises). The Permanent Mission's counsel was forbidden from interacting with the detained

individuals, the vast majority of whom were either Mission/Consulate staff or Moroccan nationals. This included not allowing the Permanent Mission's counsel to determine who was detained, forbidding them from notifying the detained individuals of their rights, including the right to counsel, or to obtain consular services and representations or pausing to allow them to secure counsel for the detained individuals.

- Despite being asked to do so, agents refused to inform the detained individuals that they were free to leave, refused to allow counsel to so inform them of these rights, and refused counsel's request that the agents at least inform them of such rights. Instead, throughout the day, agents selected a single detained individual, removed such person from the room, and interviewed them apart from his or her colleagues and counsel. Vienna Convention on Consular Relations Art. 36 ("*consular officers shall have the right to visit a national of the sending State who is in prison, custody or detention, to converse and correspond with him and to arrange for his legal representation.*")

- Still further, the United States agents exceeded the search warrant issued and the agreement, by going beyond searching "the premises". The agreements that had been reached stated that the Mission's counsel could enter the premises with law enforcement and "*together review, consider and inventory the belongings that remain.*" (*See Note Verbale* of the Permanent Mission of the Kingdom of Morocco to the United Nations NV/155/2019 [emphasis added]). These interviews, leading to the seizure of materials that were not the real premises violated this understanding, especially with the United States attorneys and agents barring the Permanent Mission's Counsel to have access to the individuals.

6. The Kingdom of Morocco, as an ally and friendly country, proved its willingness to cooperate with the United States in handling this issue in the spirit of partnership, but need for the reciprocal cooperation of the United States. The Kingdom of Morocco has a shared interest with that of the United States to ensure that all domestic employees of any Mission/Consulate member are treated with respect and in accordance with United States laws and has accordingly pledged its cooperation. The Ministry of Foreign Affairs and International Cooperation would of course extend the same consideration to U.S. officials and facilities in the Kingdom of Morocco.

The Ministry of Foreign Affairs and International Cooperation avails itself of this opportunity to renew to the Embassy of the United States of America in Rabat the assurances of its highest consideration.

**EMBASSY OF THE UNITED STATES OF AMERICA**
**Rabat**